WARREN *v.* RENDROCK POWDER CO.

*(Supreme Court, General Term, First Department. May 9, 1890.)*

FACTORS AND BROKERS—COMMISSIONS.
   Defendant agreed to pay plaintiff a commission if he obtained the approval of the United States government to the use in a certain blasting operation of an explosive manufactured by defendant. Plaintiff called the attention of the government to the explosive, and experiments were made, which resulted in its being rejected. Nothing further was done by plaintiff to induce the government to use the explosive. Two years later, after plaintiff had left defendant's employ, defendant claiming to have improved its explosive, further experiments were made, with which plaintiff had no connection, and which resulted in the government approving the explosive. Afterwards the government invited proposals for explosives for the operation in question, and defendant's bid was accepted. *Held*, that plaintiff's claim for his commission could not be maintained.

Appeal from judgment on report of referee.

Action by Robert Warren against the Rendrock Powder Company. There was judgment for defendant, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*A. B. Malcomson,* for appellant.   *G. W. Van Slyck,* for respondent.

BRADY, J. Upon the trial of this case the learned referee rendered the following opinion:

## "*Opinion.*

### "NEW YORK SUPREME COURT.

"*Robert W. Warren* agst. *Rendrock Powder Company.*  (Opinion of Referee.)

"This action is brought by the plaintiff to recover certain commission upon a quantity of explosive material, called 'rack-a-rock,' sold by defendant to the United States government, and used by it in the blast at Flood rock in 1885. It is established that in 1882 the plaintiff and defendant entered into an agreement that, if the plaintiff succeeded in getting the approval of the government to the use of this explosive in the final blast at Flood rock, the defendant was to pay him ten per cent. of the amount received for the explosive sold by the defendant to the government for the purpose named.  The price at which the explosive was to be sold was thirty-five cents per pound.  The plaintiff called the attention of the government to the explosive; and, under his supervision and direction, experiments were made by the government officers to determine its availability and usefulness.  The result of these experiments in 1882 was that these officers decided that the explosive was unfit for use in the blasting operations at Flood rock.  The plaintiff then apparently abandoned his efforts to introduce the explosive, and engaged in other business.  I cannot find that the plaintiff did anything further to induce the government to use this explosive.  Two years later, in 1884, the defendant, through its officers, claiming that they had made improvements in the explosive, in the manner of mixing the ingredients, called the attention of the government to this explosive, and further experiments were made with it under the direction of Captain Derby, one of the officers of the United States in charge of the work at Flood rock.  He suggested important changes in the way of packing the material in the cartridges; and, these changes having been made, it was decided that the explosive was fit for the use for which it was intended.  With these experiments made in 1884 the plaintiff had no connection.  The defendant after 1882 had supplied small quantities of this explosive to the government at twenty-five cents per pound.  Afterwards the government issued proposals for explosives to be used in the final blast at Flood rock.  The defendant bid for a large quantity of rack-a-rock at $23\frac{3}{4}$ cents per pound.  Its bid was accepted, and the defendant supplied thereafter to the government 243,405 9-16 pounds of rack-a-rock, and received therefor the sum of $57,808.88.  This is the sum upon which plaintiff claims ten per cent. commission.  I am of the opinion, from the facts stated, that the plaintiff's claim cannot be maintained.  He abandoned his contract in 1882, and did not succeed in obtaining the approval of the government to the use of this explosive at Flood rock.  The result was obtained by the subsequent efforts of the defendant.  It appears from the evidence that rack-a-rock and another explosive, called 'dynamite,' were about equally adapted for the use which it was desired to make of explosives at Flood rock, and that the question of the adoption by the government of either would depend upon the prices.  It became, therefore, a significant fact that the plaintiff made a large bid in the proposals for the final blast at Flood rock, of dynamite, at $24\frac{1}{2}$ cents per pound, being one-half cent less than the defendant had been supplying rack-a-rock to the government.  This action can only be explained upon one of two grounds,—either that the plaintiff, while claiming to act as agent of the defendant, was in fact acting directly against its interest, in which case he could not claim his commission from the defendant, or—and this I think the true explanation—that he considered his contract with the defendant at an end, and himself free to act against its interest in any lawful way.  The defendant is entitled to judgment.

"*New York, March,* 1889.  HAMILTON COLE, Referee."

A careful examination of the evidence in this case has led to the conclusion that the opinion of the learned referee was abundantly supported by the proofs. According to the plaintiff's own testimony, his agreement with the defendant was that he was to procure from the government authorities the approval of the powder in question for use in the blast at Flood rock; and it does not seem to be seriously questioned but that when, in the fall of 1882, the plaintiff relinquished all further effort in that direction, and left the city of New York to engage in other work at Allentown, Pa., he had not only failed to procure such approval, but, on the contrary, the powder was absolutely rejected by the officers in charge of the work as not being applicable for use in the mines. After that time the plaintiff ceased to have any connection with the subject, and does not even himself assert that he afterwards did anything further in performance of his contract. It is true he claims that, in entering into the engagement at Allentown, he reserved half of his time to devote to the defendant's interests, if it became necessary; but, beyond calling two or three times upon the defendant's officers during a period of about two years,—for what purpose is not clearly manifest,—it does not appear that he did anything, nor that the defendant called upon or expected him to do anything, or acted upon any other assumption than that the matter was at an end. What was done two years afterwards, resulting finally in the approval of the powder by the government, was done entirely by the defendant through its officers, and without any reference to, or assistance from, or connection with, the plaintiff in the matter, at any of its stages.

It is claimed that the referee erred in coming to the conclusion that the plaintiff was acting in hostility to the defendant's interest in making a bid for the sale of dynamite for the final blast, for the reason that the bid was for a small quantity only of dynamite, which was absolutely required for the blast, and which the defendant could not furnish, and did not; therefore, conflict with the defendant's bid for the rack-a-rock. But the plaintiff's bid was for the whole amount of the explosive required; and, while he claims that the bid for the larger quantity was merely nominal, and that the smaller items were the only ones he really bid for, yet it is difficult to see why, if the whole bid were not a real and genuine one, given with the view and in the hope of securing the contract, he should have inserted a different and lower price for the larger quantity required than for the two smaller items contained in the specifications,— a price, moreover, three and a half cents per pound cheaper than that at which he was at that time supplying the same article to the defendant. The plaintiff further claims that he was compelled to bid for the whole amount or none, and yet it appears that the defendant was permitted to bid for a part only of the explosive necessary for the work; and it does not seem probable that the government officials would subject one bidder to requirements which they did not exact from another. But, even if the referee was not justified in his conclusion that the plaintiff acted against the defendant's interest in the bid which he made, that fact would be of no avail to support the plaintiff's claim for recovery; for, as we have already seen, his contract was to procure from the government the approval of the powder. This he utterly failed to accomplish, abandoning his efforts so to do in the fall of 1882, when it was definitely considered and rejected, and his connection with the matter ceased. The negotiations and experiments which took place two years afterwards were conducted independently of, and without any participation by, him; and it is difficult to see how his earlier and confessedly futile efforts had any influence whatever in bringing about the ultimate result. There does not seem, therefore, to be any reason for interfering with the conclusions reached by the referee, and the judgment should be affirmed. All concur.